**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**KEN ANTHONY HILL**                                                **CIVIL ACTION**

**VERSUS**

**WERNER ENTERPRISES, INC., ET AL.**                   **NO. 23-1693-JWD-RLB**

**ORDER**

Before the Court is a Motion to Quash and/or for Protective Order (the "Motion to Quash") filed by non-parties The Spine Diagnostic Center of Baton Rouge, Inc. d/b/a Spine Diagnostic & Pain Treatment Center ("Spine Diagnostic") and Novamed Surgery Center of Baton Rouge ("Novamed") (together, "Movants"). (R. Doc. 26). Werner Enterprises, Inc., and ACE American Insurance Company (collectively, "Defendants") have opposed the Motion to Quash and Movants have filed a reply. (R. Docs. 31; 36).

Also before this Court are Defendants' Motion to Compel Subpoena Responses and Movants' opposition. (R. Docs. 32; 37).

**I.      Background**

On October 10, 2023, Ken Anthony Hill ("Plaintiff") filed suit in the 19th J.D.C. for East Baton Rouge Parish, Louisiana, against Defendants, Old Republic Insurance Company, and Opportun Muzerwa. (R. Doc. 1-1 at 1). Plaintiff alleges that on or about November 9, 2022, he was injured when Opportun Muzerwa, a driver operating a vehicle owned by Werner Enterprises, Inc., crashed into his vehicle. (*Id.*, at 2). As a result of the accident, Plaintiff seeks past, present, and future medical expenses based on his head, shoulder, neck, and back injuries. (*Id.*, at 3).

Based on diversity jurisdiction, Defendants removed to this Court on December 27, 2023. (R. Doc. 1). On March 8, 2024, this Court issued a scheduling order setting September 15, 2025 as the expert discovery deadline. (R. Doc. 15). Within this discovery period, on June 10, 2025,

1

Defendants served subpoenas (the "Subpoenas") on Spine Diagnostic and Novamed, health facilities where one of Plaintiff's treating physicians, Dr. John Braswell ("Dr. Braswell"), practices, in order to assist Defendants' expert, forensic economist Jeff Meyers ("Meyers"), in creating a report detailing the number, frequency, and percentage of Dr. Braswell's patients that undergo repeat radiofrequency ablation/neurotomies ("RFAs"). (R. Docs. 26-2; 31).

The purpose of this report is to discount Dr. Braswell's treatment recommendation that Plaintiff, if undergoing RFAs for the rest of his life, could receive up to thirty-eight cervical RFAs in the future, adding up to $325,078 to $829,524 in costs. *Id.* In response, Spine Diagnostic and Novamed filed the Motion to Quash, aiming to quash the Subpoenas, which sought the following documents from Movants:

> Billing records for the past 5 years showing Dr. John Braswell's patients that underwent cervical radiofrequency ablation/neurotomies and repeat procedures at the same level(s) during that time including under the current procedural terminology (CPT) codes 64633, 64626, 64634, and 64627. . . . Defendants are not requesting that [Movants] audit or otherwise provide an evaluation relative to this stored raw data. Only that the raw billing record data be produced. As indicated in the subpoena we are not requesting patient names, Social Security numbers, or other information that could be used to identify an individual patient.

(R. Doc. 26-2 at 9) (emphasis removed).

## II.  Arguments of the Parties

Movants ask this Court to quash or sign a protective order regarding the Subpoenas on the bases that they (i) are overly broad and unduly burdensome in terms of time and expense to Movants; (ii) seek personal and confidential information of patients other than Plaintiff; (iii) seek information that is otherwise confidential and/or privileged; (iv) seek information that is not relevant because a patient audit is neither predictive of patient behavior nor was one used by Dr. Braswell to create Plaintiff's future medical care recommendation; (v) are not proportional to the needs of the case nor likely to lead to the discovery of admissible evidence; (vi) seek information

that the production of which would violate HIPAA and/or other privacy interests; and (vii) are so oppressive as to constitute harassment or an annoyance to Movants.

Movants primarily rely on *Leonard v. Martin*, 38 F. 4th 481 (5th Cir. 2022), *Hardy v. New Jersey Manufacturers Ins. Co.*, 2023 WL 2899281 (M.D. La. 4/11/23), and *Kentrel Kerry v. Michael Cummings, et al.*, No. 23-1628-BAJ-RLB, R. Doc. 30 (M.D. La. 9/19/2024) to argue the Subpoenas must be quashed on the basis that "Movants have no obligation to conduct an audit of their entire patient population over the last five (5) years, or any given number of years, in order to compile data on their patient population for defendants in this matter[, and] have no obligation to compile, evaluate, and produce information that is not maintained in this manner in the regular course of business." (R. Doc. 26-1 at 9) (citing *Leonard*, 38 F.4th at 490). Should the Court order a response, Movants ask that it order Defendants to compensate them for the costs of the search.

In response, Defendants argue the requested information is relevant because it relates to Dr. Braswell's credibility, the reliability of the methodology underlying his future treatment recommendations, and the scope of Plaintiff's future damages. Regarding Movants' privacy, confidentiality, and HIPAA arguments, Defendants note they have requested no personal patient information and are only seeking raw billing data regarding current procedural terminology codes ("CPT") codes that would reveal (through privacy-protecting identifiers) how often Dr. Braswell's patients undergo RFAs. As for whether the request is burdensome, Defendants argue it is dissimilar from the *Leonard*, *Hardy,* and *Kentrel* requests because it asks Movants to produce existing documents, not to create new information. According to Defendants, Meyers will "review the raw billing records and provide a report detailing the number, frequency, and percentage [of patients] that undergo repeat neurotomies." (R. Doc. 31 at 3). Defendants also argue the sought production will not put an undue burden on Movants because Dr. Joseph Turnipseed, also of Spine Diagnostic, has specified that the requested information is stored

3

electronically. As for Movants' request for compensation of expenses resulting from a search for the requested information, Defendants offer "(1) $141.00 at rates of $1.00/page for the first 25 pages and $0.50/page for the remaining pages; and (2) $216.02 at rates of $1.00/page for the first 25 pages and $0.50/page for the remaining pages[,]" the expense rate for Movants' production of Plaintiff's medical records. (R. Doc. 31 at 14).

In reply, Movants reiterate their prior arguments, reemphasize that the requested information is irrelevant to Dr. Braswell's credibility, and argue allowing the request could lead to doctors often being required to conduct patient audits.

### III. Law and Analysis

#### A. Legal Standards

Subpoenas on third-parties are subject to Fed. R. Civ. P. 45 and Fed. R. Civ. P. 26. Fed. R. Civ. P. 26 allows courts to issue protective orders after a showing of good cause "to protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). A court must limit discovery if it finds "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by [Fed. R. Civ. P.] 26(b)(1)." Fed. R. Civ. P. 26(b)(2). What is set forth in Fed. R. Civ. P. 26(b)(1) is referred to as the proportionality test; it is provided below:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Under Fed. R. Civ. P. 45, a party issuing a subpoena to a non-party "must take reasonable steps to avoid imposing undue burden or expense[.]" Fed. R. Civ. P. 45(d)(1). A court must quash or

4

modify a subpoena if it: "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in [Fed. R. Civ. P.] 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d). To determine whether a person is being subjected to undue burden, courts weigh "(1) [the] relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered[]; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Wiwa v. Royal Dutch Petroleum Co.*, 392 F. 3d 812, 818 (5th Cir. 2004). Courts "consider the expense and inconvenience to [a] non-party." *Id* (citations omitted).

B. Analysis

i. Relevance, Breadth of, Time, and Particularity of the Subpoenas

Defendants have shown that, notwithstanding Dr. Boswell's opinion, medical studies and patient audits from other physicians show patients rarely receive more than five RFAs:

| Study/Physician | Total Patients | 1 RFN | 2 RFN | 3 RFN | 4 RFN | 5 RFN | 6 RFN |
|---|---|---|---|---|---|---|---|
| Study 1 | 22 | 22 (100%) | 20 (95%) | 11 (50%) | 4 (20%) | 2 (10%) | 2 (10%) |
| Study 2 (A) | 31 | 31 (100%) | 14 (45%) | 3 (10%) | 2 (6%) | 1 (3%) | N/A |
| Study 2 (B) | 40 | 40 (100%) | 12 (30%) | 5 (13%) | 3 (8%) | 2 (5%) | 1 (3%) |
| Study 3 | 28 | 28 (100%) | 12 (43%) | 4 (14%) | 2 (7%) | 1 (4%) | N/A |
| Study 4[32] | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| Dr. Hijazi | 950 | 950 (100%) | 239 (25%) | 120 (13%) | 59 (6%) | 22 (3%) | 0 (0%) |
| Dr. Waring | 1,309 | 1,309 (100%) | 270 (21%) | 105 (8%) | 66 (5%) | 40 (3%) | 28 (2%) |
| Dr. DeFrancesch | 866 | 866 (100%) | 354 (41%) | 47 (5%) | 136 (16%) | 278 (32%)[33] | N/A |

(R. Doc. 31 at 11). Because Dr. Boswell has concluded that Plaintiff could receive up to thirty-eight RFAs to Plaintiff in the future, the information sought would show whether Dr. Boswell's recommendation is supported by clinical evidence of his patients actually receiving RFAs at the same spinal levels. Movants' argument that finding this information relevant could lead to many doctors being asked to conduct patient audits is not persuasive. The discovery at issue is not asking for a patient audit, only raw billing records. While a patient audit or further studies could shed some light on whether thirty-eight RFAs has any basis in the reality of his practice or is outside of the norm in his field, he is not being asked to conduct an audit here.

5

Regarding the breadth of the Subpoenas, this Court finds they are relatively narrow as Defendants are seeking only the information necessary to determine whether Dr. Braswell's patients obtain a large amount of repeat RFAs. Documentation to support (or refute) that treatment, such as billing records, are not overbroad. Defendants are only asking for billing records spanning the last five years and Defendants are not requesting patient names or any identifying information that could violate HIPAA. While patient information may appear during the search that is subject to HIPAA, this information may be redacted as necessary to hide the identity of patients while revealing when RFAs were being obtained by the same patient.

Further, the Subpoenas do not request bills for procedures, tests, or other services not rendered to or recommended to Plaintiff, but only request information regarding cervical RFAs. *LeRoy J. Blaze, Jr. v. McMoran Oil & Gas, LLC, et al.*, No. 6:16-CV-01552, 2018 WL 2074751, at *1 (W.D. La. May 2, 2018) (court approved a request seeking "[c]opies of all independent medical-examination reports, redacted to protect the examinee's or person's names, whom you interviewed and/or examined and/or tested during 2017 to date as part of your legal and/or workers' compensation cases"). As for particularity, Defendants have provided Movants with specific CPT codes to use when searching their billing databases. *See Medwin Fam. Med. & Rehab., P.L.L.C. v. Burwell,* No. 1:15-CV-151, 2017 WL 685696, at *7 (S.D. Tex. Jan. 31, 2017), *report and recommendation adopted,* No. CV B-15-151, 2017 WL 680689 (S.D. Tex. Feb. 21, 2017) citation and quotations omitted) (CPT codes, used "for the standardized reporting of . . . medical services and procedures[,] . . . provide a uniform language that . . . describes medical, surgical, and diagnostic services[.]").

Accordingly, the Court will not quash the subpoenas based on relevant, breath, timeframe or particularity.

### ii. Burden, Expense, and Inconvenience Imposed Upon Movants

Movants argue the Subpoenas must be quashed because they impose an undue burden due to their similarities to the requests quashed by the Fifth Circuit in *Leonard* and by this Court in *Hardy* and *Kentrel*. In *Leonard,* the Fifth Circuit quashed a request that sought "(1) the number of patients in the last five years that Turnipseed recommended get annual cervical neurotomies over the course of five to six years; and (2) the number of known patients who actually underwent the procedures." *Leonard*, 38 F. 4th at 485. The Fifth Circuit found the request unduly burdensome "to the extent [it] require[d Dr.] Turnipseed to do more than simply produce documents already in existence," because "Rule 45 does not contemplate a subpoena requiring a nonparty to analyze documents in [its] possession and generate new information." *Id*., at 490.

In *Hardy*, this Court held that requests for "documents evidencing the number of patients for which certain medical treatment was recommended by [a doctor], and when the patients actually received the recommended treatment for the previous five years[,]" were unduly burdensome. *Hardy*, 2023 WL 3767056, at *5-7. This Court found the same in *Kentrel,* where Spine Diagnostics was asked for the following: "The total number of patients on whom, in the last 5 years, Dr. Joseph Turnipseed performed a [first,] second[, third, fourth, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, and/or twelfth] lumbar radiofrequency ablation at the same level(s), including but not limited to, procedures that are included under [CPT] codes 64633, 64626, 64634, 64627, 64635, 64622, 64636, and 64623." *Kentrel*, No. 23-1628, R. Doc. 30.

The same type of request is not being made here. The request here, while generally similar to those in *Leonard, Hardy,* and *Kentrel*, differs in that it does not seek (i) information regarding Dr. Braswell's recommendations of RFAs, (ii) a count of the number of patients who underwent RFAs, or (iii) the generation of new information. The request simply asks Movants to produce redacted bills for single and repeat cervical RFAs so that Meyers can assess the bills

7

himself. As Movants are only being asked to produce existing documents regarding whether RFAs occurred, the Subpoenas are not unduly burdensome in and of themselves under *Leonard, Hardy,* or *Kentrel*.

Rather, whether the Subpoenas may be quashed turns on whether they are unduly burdensome due to the time and funds Movants would need to expend to respond.

> Affiant Chase J. Lavigne, V.P. of Operations of a majority owner of Novamed, noted:
>
> All records and procedures performed at Novamed are included in the medical records of the respective patients. As it relates to medical procedures performed by Dr. John Braswell, the operative reports from Dr. Braswell at Novamed are also provided to Dr. Braswell and [Spine Diagnostic] for inclusion in the patient's chart at Spine Diagnostic. . . . Novamed cannot identify the number of [RFAs] repeated by any patient without a manual review of the patient's actual chart. . . . Time and effort would have to be expended to review patient charts, which are in the thousands, even if limited to a given time period, whether that be 5 years or otherwise, and identify which patients repeated RFAs at the same level. . . . It would take an excessive amount of time to review thousands of patient's records to . . . compile the information requested and then print and redact the billing information and documents requested in the Subpoena. . . . I would conservatively estimate the range of time required . . . to be hundreds of hours for thousands of charts, with Novamed having thousands of patient visits per year (7,000 patient visits per year over 20 years), which includes the time necessary for redaction of information[.] . . . [This] would include oversight and review of clerical work by clerical employees to accomplish these tasks. [T]he expense for such a review and compilation [is] estimated to be in the tens of thousands of dollars.

(R. Doc. 26-5). Dr. Braswell also signed an affidavit which provided the following:

> The practice at Spine Diagnostic does not track or maintain a list or separate set of records to address[] what patients were recommended and/or received certain types of treatment, frequency of treatment, and/or repeating such treatment. Such information would be included in the individual patient's medical chart and corresponding billing record, requiring a manual review of patient files. To produce the information sought . . . would be a significant burden . . . and would have a significant negative impact given the interruption and interference to the medical practice. Time and effort would have to be expended to review patient charts, which are in the hundreds if not thousands, even if limited to a given time period, whether that be 5 years or otherwise, and identify which patients repeated [RFAs] at the same level. . . . I conservatively estimate the range of time required to conduct such a review . . . to be hundreds of hours for over 5,000 charts, which includes the time necessary for redaction of information[.] My above-stated estimated time would include oversight and review of clerical work by clerical employees to accomplish these tasks. My standard fee

8

associated with charges for legal matters is $1,500.00 per hour. As such, the expense for such a review and compilation of information would be significant.

(R. Doc. 26-4). This Court finds the investments of time and money that would need to be put forward by Spine Diagnostics and Novamed are not proportional to the needs of this case. While the amount of future medical costs estimated for the recommended RFAs is considerable, Defendants have already obtained information—numerous studies and patient audits by other doctors—that may be used to challenge Dr. Braswell's credibility. This can also be explored in a deposition of Dr. Braswell. Thus, this Court quashes the Subpoenas because Movants will be unduly burdened by the time and cost of responding and such undue burden is not proportional to the needs of the case.[1]

## IV.    Conclusion

Based on the foregoing,

**IT IS ORDERED** that the Motion to Quash (R. Doc. 26) is **GRANTED**, and the Motion to Compel Subpoena Responses (R. Doc. 32) is **DENIED AS MOOT**.

Signed in Baton Rouge, Louisiana, on October 29, 2025.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

---

[1] While Defendants offer to compensate Movants based on the costs they incurred as a result of providing Plaintiff's medical records, the cost of producing Plaintiff's medical records differs significantly from the potential time and costs here as the production in this instance will require a review of multiple client files to determine whether RFAs were repeated.